IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ROBERT SEEDS and LAURA SEEDS,

Plaintiffs,

vs.                                                    No. CIV 00-1341 BB/LFG

RICHARD LUCERO, individually and in his
official capacity, THE CITY OF ESPAÑOLA,
JOHN LENSSEN, individually and in his official
capacity, ANTHONY VANDERVOSSEN and
KATHY VANDERVOSSEN, and SIX UNKNOWN
EMPLOYEES OF THE CITY OF ESPAÑOLA,

Defendants.

## MEMORANDUM OPINION AND ORDER
## GRANTING IN PART THE VANDERVOSSEN DEFENDANTS'
## MOTION TO COMPEL DISCOVERY

THIS MATTER comes before the Court on Defendants Anthony and Kathy VanderVossen's

("Defendants" or "VanderVossens") Motion for Dismissal or, in the Alternative, to Compel Discovery

[Doc. 28] from Plaintiffs Robert and Laura Seeds ("Plaintiffs" or "Seeds").  For the reasons given

below, the Motion to Compel Discovery is granted in part.[1]

---

[1]A motion to dismiss is a dispositive motion and would ordinarily be handled by means of a
Report and Recommendation to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B).  However,
in this case Defendants have asked for alternative relief in the form of an order compelling discovery.
The Court finds that the request for dismissal is not appropriate in this case and therefore makes no
ruling or recommendation on the dispositive motion.  Instead, the Court finds that the alternative
relief requested by Defendants is the appropriate remedy and therefore treats this as a pretrial
discovery motion, which may properly be resolved by the Magistrate Judge under 28 U.S.C. §
636(b)(1)(A).

## Background

The Seeds are suing the VanderVossens and others, alleging that the Defendants deprived them of their constitutional rights, interfered with their business relations, engaged in malicious abuse of process, and intentionally inflicted emotional distress on Plaintiffs.

On February 20, 2001, the Court found that the Seeds failed to provide all the information required in initial disclosures and failed to appropriately supplement these disclosures, as directed by the Court at a scheduling conference called to consider Defendants' complaints. The Seeds were ordered to provide certain discovery, including a breakdown of a claimed $30,000 in damages for attorney's fees allegedly incurred in connection with the Seeds' cause of action for malicious abuse of process. The Seeds were ordered to provide additional information showing billing statements, time sheets, or a calculation as to how the $30,000 was allocated among the various cases allegedly necessitated by Defendants' actions.

The VanderVossens now bring this Motion to Compel, charging that Plaintiffs have failed in their discovery obligations and continue to defy the Court's February 20 order. The Court will address individually each of Defendants' discovery requests.

## Individual Discovery Requests

### A.  Requests for Admissions

Requests Nos. 3 and 4.

In Request No. 3, Defendants ask Robert Seeds to admit that, as of September 11, 1998, he boarded dogs at 1205 Birch Lane that were used in connection with his commercial guide service. Seeds responded that he "admits he has owned dogs and kept them at his house for many years and did so as of September 11, 1998." In Request No. 4, Defendants ask Seeds to admit that he has, from

time to time between September 11, 1998 and the present, boarded dogs at 1205 Birch Lane that are used in connection with the guide service. Seeds responded that he has owned dogs and kept them at his home for many years, but that he "keeps his own dogs and does not 'board dogs' for a fee."

Defendants argue that this response is inadequate in that Seeds does not state whether the dogs which he keeps and has kept at his house are the same dogs used in the commercial guide service. The Court agrees.

Seeds was required to admit each of the Requests for Admission in full or in part, deny the requests in full or in part, set forth reasons why he cannot admit or deny, or object to the requests. Fed. R. Civ. P. 36(a). Seeds did not comply with the Rule. For each request, if he thought part of the statement was accurate and part was not, he was obligated to admit the accurate part and deny the balance. ATD Corp. v. Lydall, Inc., 159 F.3d 534, 548-49 (Fed. Cir. 1998). If he thought the request was improper, he should have lodged an objection. The Court will order Seeds to respond fully and appropriately, stating whether any of the dogs he has kept at his house since September 11, 1998 were used in his guide service.

Request No. 12.

In this Request, Defendants ask Plaintiffs to admit that Robert Seeds did not begin residing at 1205 Birch Lane until after October 1, 1985. Plaintiffs denied this Request, stating that "Mr. Seeds resided on Birch Lane for many years prior to 1985. The postal service did not assign house numbers until very recently." Defendants contend that this response is ambiguous and equivocal. The Court agrees. Seeds responded to a question that was not asked, and failed to respond adequately to the question that was asked. It is apparent that Defendants want Robert Seeds to state whether he resided in the property now known as 1205 Birch Lane before October 1, 1985. Seeds will be

ordered to admit or deny this statement.

Request No. 34.

In this Request, Defendants seek Plaintiffs' admission that "No zoning permits or approvals of any kind, including a home occupation license, have been granted by the City of Espanola allowing Fairview Towing to store vehicles at 1205 Birch Lane." Plaintiffs' response is to deny the allegation, without further explanation. Defendants complain that this response fails to satisfy the request made in Interrogatory No. 2, which asks that Plaintiffs "state the complete factual basis" for each denial made to a Request for Admission.

Plaintiffs contend that they provided the factual basis for this denial in a March 19, 2001 letter to Defendants. The statement quoted in Plaintiffs' Response Memorandum [Doc. 33, at 3] is nonsensical and, in any case, this response is inadequate as it does not comply with the request made in Interrogatory No. 2. Plaintiffs will be ordered to describe each and every zoning permit or approval granted by the City of Espanola allowing Fairview Towing to store vehicles at 1205 Birch Lane, and to state affirmatively that the permits or approvals thus listed comprise all such permits or approvals.

Request No. 36.

Request No. 36 seeks Plaintiff's admission that "Neither Anthony VanderVossen nor Kathy VanderVossen caused the release, or induced others to release, confidential information from the personnel file of Laura Seeds," as alleged in the complaint. The Seeds deny this Request, adding that both of the VanderVossens "have regularly spent time at City hall pressuring employees and officials to take actions against the Seeds . . .."

Defendants contend that this answer is inadequate, in that it does not provide a sufficiently

4

detailed factual basis for the allegation that the VanderVossens caused the release of the confidential information.  Plaintiffs counter that the explanation was given in a March 19, 2001 letter, and states that Seeds "expects to confirm the connection between the publication of the article and the actions of the VanderVossens."  Plaintiffs will be ordered to provide a more complete and detailed explanation for their denial; mere reference to an earlier letter, and a statement that a connection is expected, are not sufficient.  Plaintiffs must state the name(s) of any city employees who were induced by the VanderVossens to release the confidential information, as well as the date and nature of the inducement in which the VanderVossens were involved, and further to give all details surrounding the alleged incidents.

## B.  **Interrogatories**

Interrogatory No. 3.

In this Interrogatory, Defendants ask Plaintiffs to state the complete factual basis for the allegation that Anthony VanderVossen used his position as nephew to the mayor to pressure city employees to take the various actions against the Seeds, as alleged in the complaint.  Plaintiffs responded to this request in the passive voice, stating that, after Anthony VanderVossen "spent a great deal of time at City Hall," employees "were then directed to take various actions against Robert Seeds or his business."  The response also states that "Marvin Vigil was directed to sign letters threatening to Seeds and was directed to order agencies to remove Seeds' towing business from 911 rotation logs."  Plaintiffs do not state who directed the actions to be taken, and how these directions are related to Anthony VanderVossen's visits to City Hall.

Other than Marvin Vigil, Plaintiffs do not give names of any employees who were pressured to act against the Plaintiffs, do not identify the "various city employees" referred to in the answer, and

do not provide dates or any other details of the exact actions allegedly taken against the Plaintiffs at the behest of the VanderVossens.  Although Plaintiffs state that they do not know the exact words used by Anthony VanderVossen and that they will supplement their answer to this Interrogatory as more information is obtained through discovery, the Court will order Plaintiffs to provide as much detail at this point as they can.  Specifically, they must give the names of the employees to whom Anthony VanderVossen spoke, the dates on which he spoke, the nature of the pressure applied to these employees including insofar as possible, the content of his communications with them and the exact actions taken as a result of these communications.

Interrogatory No. 5.

In this Interrogatory, Defendants ask for a description of "every action which you contend Richard Lucero directed Espanola City Council employees to take against Robert and Laura seeds at the request of Anthony VanderVossen," as alleged in the complaint, including a description of each such action, the name of the employee who took the action, and the complete factual basis for the contention that the action was requested by VanderVossen.

The response is inadequate.  It refers back to the complaint rather than answering the question asked, does not mention Anthony VanderVossen at all, and fails in general to provide the factual basis requested.  Plaintiffs contend that the interrogatory asks for detailed information as to what went on in a conspiracy conducted "behind closed doors," and that they have not yet conducted discovery which will enable them to answer this question.  However, although discovery has not yet closed, Plaintiffs have had several months to conduct discovery and should be familiar by now with the factual basis for the generalized allegations of their complaint.  Plaintiffs are seeking damages for actions which they allege were taken by the VanderVossens, and merely stating that they "know the

outcome of those actions but do not know the details of how the VanderVossens . . . directed city employees to do their will" is not sufficient.  Defendants are entitled to know the basis for the allegations against them.

Plaintiffs will be ordered to respond fully to this Interrogatory, giving a description of each action allegedly taken against Robert and Laura Seeds and, for each such action, the name of the city employee who carried out the action as well as the complete factual basis for Plaintiffs' contention that the action was requested by Anthony VanderVossen.

Interrogatory No. 6.

In this Interrogatory, Defendants ask Plaintiffs to list the name, address, and telephone number of each person who has engaged Robert Seeds as a guide for the past five years.  Plaintiffs respond that the information requested is not relevant to any claim or defense in the case, is not reasonably calculated to lead to the discovery of admissible evidence, and is in the nature of sensitive proprietary business information.  Defendants counter that the information will enable them to investigate the truth of Robert Seeds' contention that he does not conduct his guide service business from his home, an issue relevant to whether the guide service business is operating in violation of the City zoning code.

Plaintiffs have moved separately [Doc. 34] for a protective order with regard to this information.  Defendants have stated that they are willing to enter into a confidentiality stipulation and order to protect any sensitive information.  The motion for protective order has been denied in a separate memorandum opinion and order filed contemporaneously with this one, and a Confidentiality Order has been entered in connection with both this motion and the separate motion for protective order.  Plaintiffs will be ordered to produce this information, subject to the

confidentiality order set out at the end of this opinion.

Interrogatory No. 8

In this Interrogatory, Defendants seek the complete factual basis for Plaintiffs' contention that Robert Seeds' use of his Birch Lane property is grandfathered in, as alleged in paragraph 34 of the complaint, including information as to the street address of the property allegedly grandfathered in, a description of the business, and the date on which such business first began operating at that address. Plaintiffs object to this Interrogatory on grounds of relevance, but they go on to state that "Robert Seeds began towing cars and storing towed cars on Birch Lane in 1970. Cars were stored at different locations on Birch Lane, including the area where towed cars are currently stored."

The information sought is clearly relevant to the claim that the Seeds were treated differently than other persons operating similar businesses, and it is relevant to the claim that the VanderVossens engaged in malicious abuse of process against the Seeds. Plaintiffs will be ordered to respond fully to this Interrogatory, supplying all of the information requested by Defendants, including the street address of the property allegedly grandfathered in, a description of the business or businesses conducted here, and the date on which the business or businesses first began to operate at that address. If there is more than one location on Birch Lane which Plaintiff contends is grandfathered in, the above information must be given for each such address.

Interrogatory 9.

Defendants seek, in this Interrogatory, a detailed description of each incident in which Fairview Towing was removed from a law enforcement rotation log, as alleged in paragraph 23 of the complaint. Plaintiffs state in response that, on September 1, 1998, City Planning Director Marvin Vigil wrote a letter to various law enforcement agencies, without authority to do so, requesting that

Fairview Towing be removed from these agencies' towing rotation logs.

Defendants correctly point out that the response fails to identify the logs from which Fairview Towing was removed, or when the alleged removals occurred.  Plaintiffs will be ordered to supply this information.

Interrogatory No. 10.

Plaintiffs are asked in this Interrogatory to state the complete factual basis for their allegation that Fairview Towing was not illegally storing vehicles at 1205 Birch Lane.  They respond that Fairview Towing had an agreement with Robert's Towing, allowing Fairview  to store towed cars in the storage lot operated by Robert's.

Defendants contend that this answer is not responsive.  The Court disagrees.  Plaintiffs state that they provided a copy of the storage agreement to Defendants and state further that Defendants are aware that Robert Seeds has a special exception allowing him to store towed cars at 1205 Birch Lane.  Plaintiffs need not respond further to this Interrogatory.

Interrogatories Nos. 11 and 12.

In these two Interrogatories, Defendants seek information on the factual basis of Plaintiffs' allegations that the VanderVossens participated in a conspiracy against them and acted jointly with others to deprive them of their constitutional rights.  In their response, Plaintiffs cite several specific examples of actions taken by the VanderVossens in conjunction with certain city employees, although much of the rest of the response contains generalized allegations such as, "Anthony VanderVossen used his relationship with he Mayor . . . to gain access to city employees and city officials in order to pressure them to take selective enforcement actions against Robert Seeds."  Plaintiffs are ordered to supply further information, including a description of all acts by the VanderVossens in furtherance

of the alleged conspiracy, the names of persons with whom it is contended they conspired, and any specific acts by the VanderVossens in conspiracy with John Lenssen.

Interrogatory No. 13.

Defendants seek in this Interrogatory to discover the basis for Plaintiffs' claim that the VanderVossens were acting under state law for purposes of their Section 1983 cause of action. Plaintiffs responded that "Anthony VanderVossen was seen at City Hall on a regular basis meeting with city officials concerning Robert Seeds," that he used city resources to try to obtain an easement across the Seeds property, and that he used the city attorney to try to set aside Robert Seeds' special exception for his towing business.  Plaintiffs include additional information in their Response to Defendants' motion to compel [Doc. 33 at 6-7]; however, even this additional information contains no specific details regarding the alleged involvement of either of the VanderVossens in any actions taken by the city attorney, or the names of the city employees who demanded removal of the posts on the Seeds property.  The only statement of involvement by either VanderVossen is the sentence, "Anthony VanderVossen's influence over city employees based on his uncle's political position amounts to acting under the color of law."

This is insufficient.  Plaintiffs are ordered to respond fully to this Interrogatory, setting forth in specific detail the factual basis for their allegation that the VanderVossens were acting under the color of law.

Interrogatories Nos. 14 through 17.

In these Interrogatories, Defendants ask Plaintiffs to state the complete factual basis for their contentions that the VanderVossens are liable for various state torts. Plaintiffs have failed to meet their obligations with respect to these contention interrogatories.

There is nothing improper about "contention" interrogatories, which seek specific information to back up a plaintiff's allegations.  Such interrogatories serve to "narrow and define issues for trial and to enable the propounding party to determine the proof required to rebut the respondent's position," Koch v. Koch Indus., Inc., 6 F. Supp. 2d 1192, 1200 (D. Kan. 1998), and are most useful toward the end of the discovery period.  Fed. R. Civ. P. 33(c).  Discovery has not closed in this case, but it has been going on for a sufficient time that Plaintiffs may now appropriately be put to the test of demonstrating whether they have evidence to support their contentions.

In response to Interrogatory 14, involving the claim of malicious abuse of process, Plaintiffs state that the VanderVossens used their influence with the mayor to have the City bring baseless criminal charges against the Seeds, and that the VanderVossens filed a petition containing knowingly false allegations in an attempt to set aside Robert Seeds' special exception.

Under New Mexico law, the tort of malicious abuse of process is "designed to offer redress to a plaintiff who has been made the subject of legal process improperly, where the action was wrongfully brought by a defendant merely for the purpose of vexing or injuring the plaintiff, and resulting in damage to his or her personal rights."  DeVaney v. Thiftway Mktg. Corp., 124 N.M. 512, 517, 953 P.2d 277, 282 (1997).  The cause of action consists of the following elements:

> (1) the initiation of judicial proceedings against the plaintiff by the defendant; (2) an act by the defendant in the use of process other than such as would be proper in the regular prosecution of the claim; (3) a primary motive by the defendant in misusing the process to accomplish an illegitimate end; and (4) damages.  In short, there must be both a misuse of the power of the judiciary by a litigant and a malicious motive.

DeVaney, 124 N.M. at 518.  The tort of malicious abuse of process is construed narrowly to protect

the right of access to the courts.  Id., at 519.

Plaintiffs will be ordered to respond more fully to this Interrogatory, describing the actions taken by the VanderVossens to exert influence on the mayor, the nature of the criminal charges brought, the reasons why Plaintiffs contend that the charges are baseless, the allegations made in the petition to set aside the special exception which Plaintiffs claim are untrue, the reasons why Plaintiffs contend the allegations are false, and any evidence of a malicious motive on the part of Defendants.

In response to Interrogatory 15, involving the claim of wrongful interference with business relations, Plaintiffs refer back to their answer to Interrogatory 11 and state further that the VanderVossens conspired with other defendants to attempt to have Laura Seeds' business removed from law enforcement towing logs.  In their Response to Defendants' motion to compel [Doc. 33 at 7], Plaintiffs state that "Defendant is aware of the actions taken by the City to have the Seeds' business removed from the 911 rotation logs," refer to a letter written by Marvin Seeds, and refer to contacts between Anthony VanderVossen and Johnny Vigil "described above."

This is insufficient.  A reference to other discovery documents is not an appropriate response to an interrogatory, Willner v. Univ. of Kansas, 848 F.2d 1023, 1029 (10th Cir. 1988); Pilling v. Gen. Motors Corp., 45 F.R.D. 366, 369 (D. Utah 1968), and the answer given here is impermissibly vague.  Plaintiffs will be ordered to state in detail the actions taken by the VanderVossens, giving dates, persons with whom the VanderVossens spoke, the nature of the communications, and all other details concerning alleged wrongful interference.

In response to Interrogatory 16, involving the claim of prima facie tort, Plaintiffs responded that, "[t]he actions of Anthony and Kathy VanderVossen as outlined in the complaint and above, taken as a whole, constitute prima facie tort."  This is completely inadequate.  It is improper to merely

refer to back to the complaint in answering interrogatories.  <u>Pilling</u>, at 369.

Plaintiffs will be ordered to set forth in detail the factual basis for this cause of action, which requires that they prove that Defendants committed an intentional unlawful act with intent to injure Plaintiffs, that Plaintiffs were injured thereby, and that the act was without social or economic justification or has insufficient justification.  <u>Schmitz v. Smentowski</u>, 109 N.M. 386, 394, 785 P.2d 726, 734 (1990).        In response to Interrogatory 17, involving a claim of intentional infliction of emotional distress, Plaintiffs state only:  "The actions of Anthony and Kathy VanderVossen outlined above and in the complaint were intentional acts, and were intended to cause, and did cause, emotional distress to Robert and Laura Seeds."  The "actions . . . outlined above" are not identified in any way and, as noted above, it is improper to answer interrogatories by merely referring back to earlier pleadings.  <u>Pilling</u>, at 369.

In addition, the Court agrees with Defendants that Plaintiffs have failed to provide any factual basis for their claims of emotional distress including symptoms and medical treatment received, "or any other evidence of its occurrence."  Plaintiffs will be ordered to supply this information in detail, bearing in mind that the cause of action for intentional infliction of emotional distress requires a showing that the Defendants' conduct was extreme and outrageous  under the circumstances, that the Defendants acted intentionally or recklessly, and that as a result of the conduct, the Plaintiffs suffered severe emotional distress, <u>Coates v. Wal-Mart Stores, Inc.</u>, 127 N.M. 47, 57, 976 P.2d 999, 1009 (1999), and that liability under this cause of action arises only where the conduct is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community.  <u>Dominguez v. Stone</u>, 97 N.M. 211, 214, 638 P.2d 423, 427 (Ct. App. 1981).

Interrogatory 18.

Defendants seek in this Interrogatory to discover the total amount Plaintiffs are claiming for compensatory damages, and a detailed statement as to how that amount was derived and calculated. Plaintiffs respond that total damages have not yet been calculated, but they note that the "Seeds have spend $30,000.000 in attorneys fees defending the various actions brought by the City on behalf of the VanderVossens." In their Response Memorandum [Doc. 33 at 8], Plaintiffs give a figure of $250,000.00 in general damages but state they have "not yet determined how this amount will be presented to the jury." They also note that they have provided Defendants with copies of attorney David Henderson's billing records in response to this Interrogatory.

Defendants' argument is well taken that Plaintiffs have failed to respond adequately to this Interrogatory, and have violated the Court's earlier discovery order. That order resulted from Defendants' objections to Plaintiffs' initial Rule 26 disclosures, in which Plaintiffs stated that they were seeking $250,000 for each claim in the complaint. In their Amended Initial Disclosures, Plaintiffs do not give any further information as to how this amount was calculated and apparently have not given any further thought to this question, as they continue to assert in their recently-filed Response Memorandum that they "have not yet determined how this amount will be presented to the jury."

In addition, the attorney billing records, which Plaintiffs have provided in support of their claim for $30,000 in attorney fees incurred in defending various claims against them, do not adequately address the question asked in this Interrogatory, nor do these records comply with the Court's discovery order of February 20, 2001 [Doc.23], which stated:

> The second area of concern raised by Defendants deals with the claimed inadequacy of initial disclosures relating to damages. Seeds have disclosed, in a supplementary filing, that the damages included attorney fees in the amount of $30,000. No breakdown of this figure was provided. The $30,000 arose from at least three cases or proceedings involving the Seeds. Seeds are directed to provide additional information showing billing statements or time sheets, or calculations on how the $30,000 was allocated amongst the various cases.

Plaintiffs have not provided a breakdown showing how the $30,000 was allocated among the various cases, and the Court agrees with Defendants that "[t]here is no information in any of these entries [in the billing records] that would permit the VanderVossens to allocate . . . Mr. Henderson's fees to the various lawsuits and criminal complaints on which Plaintiffs are basing their claims." [Doc. 40 at 2]. Plaintiffs will be ordered to provide such a breakdown, to identify the various lawsuits or criminal complaints for which they are seeking attorney fees, and to state clearly, completely, and in detail, the manner in which the $250,000 figure was calculated.

Interrogatory 19.

This Interrogatory asks Plaintiffs to state the total amount they are claiming for emotional distress damages, providing a detailed accounting of the manner in which that figure was derived and calculated. Plaintiffs responded that they have not yet calculated an amount. In their Response Memorandum [Doc.33 at 8], Plaintiffs do not address this Interrogatory, except to state that in response to Interrogatories 18 and 19, they have provided copies of attorney David Henderson's billing records. This is completely unresponsive. Defendants are entitled to know the nature and extent of Plaintiffs' alleged injuries for emotional distress, including documentation of hospitalization and doctors' bills and records, if any, in order that they may investigate this element of damages and meet the proofs at trial. Plaintiffs will be ordered to respond fully to this Interrogatory.

15

**C.  Requests for Production of Documents**

RFP Nos. 4, 5, and 7.

In these Requests, Defendants ask Plaintiffs to produce documents concerning Robert Seeds'

guide service and the use of dogs in that service.

As with Interrogatory No. 6, discussed above, which also seeks information regarding Robert

Seeds' guide service, Plaintiffs object that this Request asks for information which is irrelevant and

which constitutes proprietary business information.   Although Plaintiffs state in their Response

Memorandum that "Requests No. 4, 5, and 7 are the subject of the protective order filed herewith,"

no protective order has been filed in this case, nor are these Requests the subject of Plaintiffs' Motion

for Protective Order regarding Robert Seeds' list of business customers [Doc. 34].   In that motion,

Seeds argues that release of his list of business customers would cause disruption of his guide

business, in that Defendants would contact his customers in their investigation, and the list may fall

into the hands of a competitor.   As noted above, Plaintiffs' motion for a protective order has been

denied, subject to the Confidentiality Order.   In any case, much of the information sought in Requests

4, 5, and 7 goes beyond customer lists.

RFP 4, as noted above, is a broad request for all documents related to the guide service.   RFP

5 asks for all telephone bills for the past five years, including all bills relating to Seeds' guide service.

RFP 7 seeks documents relating to the dogs boarded at 1205 Birch Lane for the past five years,

including veterinarian bills and documents relating to the use of such dogs in the guide service.

Defendants argue that this information is relevant to Seeds' allegation that he does not operate the

guide business from his home at 1205 Birch Lane.   The assumption is that this allegation was made

to support Plaintiffs' claim that the VanderVossens unjustifiably filed complaints about the guide

16

business.

The Court agrees with Defendants that information going to the question of whether Seeds operates his guide service out of his residence is relevant to the question of the legitimacy of the VanderVossens' complaints about that practice. However, the Request is overbroad. Plaintiffs will be ordered to produce documents responsive to RFP Nos. 4, 5, and 7, but only for the past five years. With regard to the telephone bills under RFP No. 5, Plaintiffs may alternatively produce a release allowing the telephone company to provide the records directly to Defendant's counsel. In addition, the parties are advised that these materials are subject to the confidentiality order set forth at the end of this opinion, as are all other materials and information ordered produced pursuant to this order.

RFP No. 11.

In this Request, Defendants ask Plaintiffs to produce all documents relating to the construction of the Seeds residence at 1205 Birch Lane, including, *inter alia,* contracts, plans, loan documents and building permits. Plaintiffs object that these materials are not relevant to any claim or defense in the case. Defendants counter that the Seeds' occupancy of 1205 Birch Lane and his use of that property as a storage yard are at issue in this case.

The Court agrees that Seeds' occupancy and use of the Birch Lane property, and the timing thereof, is relevant in this case. The Seeds allege in their complaint that "Robert Seeds has owned a towing business and operated it from his home on Birch Lane in Espanola since 1972" (Complaint, ¶ 7), that "Robert Seeds has owned a towing business since 1972 and has lived at the address on Birch Lane since that time. During that time he has operated his business and stored towed vehicles on that property" (Complaint, ¶ 33), and that "In 1978 the City of Espanola adopted zoning ordinances and the Seeds property was zoned residential. Since Robert Seeds had operated his

17

business at that location for many years prior to the zoning ordinance, his use of the property was 'grand fathered in'" (Complaint, ¶ 34).  Given the Seeds' allegation that their use of the property for a towing business was "grand fathered in" and that they had used the property for that purpose since 1972, the assertion is without merit that "Robert Seeds use of the property in 1985 [the year the house now known as 1205 Birch Lane was built] is simply not an issue in this case."

Although the historical use of the property is relevant to Plaintiffs' claims in this case, Defendants' Request No. 11 is overbroad.  Plaintiffs will be ordered to produce contracts for the house construction and building permits, but none of the other requested documents need be produced.

RFP No. 15.

In this Request, Defendants seek "any and all documents relating to towing businesses owned or operated by you since 1970, including, without limitation, financial records, income tax returns, correspondence, client lists, insurance policies, licenses, inspection reports or records, driver medical cards, tow tickets or invoices issues since January 1, 1970."  Plaintiffs object on grounds of relevance and the fact that such material constitutes "sensitive proprietary information," but without waiving their objection, they apparently supplied materials referred to in the Response as Exhibit F.

The Court does not have a copy of Exhibit F; however, Plaintiffs state in their Response Memorandum [Doc. 33 at 8-9] that they provided over 150 pages of documents to Defendants, including State Corporation Commission documents, business licenses, registration information, insurance information, and copies of towing journals back to 1977, insofar as Plaintiffs have been able to locate them.

Defendants argue that they need all the information described in the Request in order to

disprove the Seeds' contention that their use of the property at 1205 Birch Lane predates the city's zoning code (which, the complaint alleges at ¶ 34, was instituted in 1978). They also say that the material is relevant to Plaintiffs' claims that Fairview Towing has suffered damages, and that it will help to clarify the relationship between the two towing businesses.

The Request is overbroad for these purposes. Plaintiffs will be ordered to provide, to the extent they have not already done so, documents relating to their claim that, prior to 1978, they operated a towing business from the property now known as 1205 Birch Lane. The question of damages has been addressed in other discovery requests, and Plaintiffs are under an obligation to provide a breakdown of their claim for damages; the Court will order Plaintiffs, in addition, to provide documentation of any claim for damages based on harm to the towing business which was allegedly taken off the towing rotation. No other business losses are at issue in this case, as noted in the Court's discovery order of February 20, 2001 [Doc. 23 at 3].

RFP No. 21.

In this request, Defendants asked for any and all documents related to the damages they are claiming. Plaintiffs did not object to this Request but responded that they provided attorney billing records and will provide further information when it is obtained. The information requested is relevant, including financial records, invoices for attorney's fees incurred, medical records, medical bills and canceled checks for payments made for medical or professional services. Plaintiffs will be ordered to provide all of the information and documentation requested, as well as to provide a breakdown of how their claimed damages are calculated.

RFP No. 22.

Defendants seek any and all engagement letters or agreements between Plaintiffs and attorneys

to whom they have paid the attorney's fees which make up an element of their claimed damages. Plaintiffs do not object to this Request and state in their Response Memorandum that they have recently located the employment agreement between themselves and attorney David Henderson and have submitted it to Defendants. Plaintiffs will be ordered to state whether David Henderson is the only attorney whose fees they seek to recover in this lawsuit and, if he is not, to state the names of the other attorneys and provide engagement letters or agreements for those attorneys as well.

RFP No. 33.

In this Request, Defendants ask Plaintiffs to supply all documents related to treatment, consultation, counseling, or services provided by any physician, counselor, psychologist, psychiatrist, medical professional or healthcare provider for the past ten years, including documentation relating to Plaintiffs' claims for emotional distress damages. Plaintiffs state that they have provided a list of physicians and a medical release as required by local rule; Defendants claim that Plaintiffs have not produced any documents in response to this Request.

The Request is reasonable. Although it is true that damages from emotional distress may be inferred from circumstances beyond the ordinary, and that medical evidence concerning physical symptoms is not required, Morgan v. Secretary of HUD, 985 F.2d 1451, 1459 (10th Cir. 1993), Defendants are nevertheless entitled to discover documentation relating to Plaintiffs' claims for emotional distress damages, and if any such documents exist, Plaintiffs must produce them.

RFP No. 38.

Defendants seek in this Request any and all documents relating to any prior divorce proceeding to which Robert Seeds has been a party. Plaintiffs object on the grounds of relevance. Defendants' argument on relevance is not convincing; Plaintiffs need not respond to this Request.

RFP No. 39.

Defendants ask for state and federal income tax returns since 1970.  Plaintiffs object on the grounds of relevance and overbreadth but, without waiving the objection, state that they will produce income tax returns for the past three years for Robert Seeds only, since Laura Seeds' income is low enough that she was not required to file tax returns.  Defendants argue that the returns from 1970 on are relevant to the contention that Robert Seeds has occupied the current property since 1970, and to evaluate the Plaintiffs' claims for financial loss.

The Court agrees with Defendants that the tax return information is relevant to damages, but agrees with Plaintiffs that a request for tax returns for the past 30 years is overbroad.  Each Plaintiff will be required to produce his or her tax returns for the past five years and, for any years in which a tax return was not filed, to submit an affidavit to that effect.

RFP No. 42.

Defendants seek production of all documents identified in their initial disclosures and contend that Plaintiffs have failed to produce the transcript of a certain telephone conversation.  Plaintiffs state in their Response Memorandum that omission of this transcript was inadvertent and that they have produced another copy.  The Court therefore assumes that this Request has been fully answered but to the extent it has not, Plaintiffs will be ordered to produce a copy of the transcript as requested.

**D.  Violation of Discovery Order of February 20, 2001**

Finally, Defendants argue that Plaintiffs violated the Court's discovery order of February 20, 2001, in that they have not yet provided the required breakdown and calculations of damages.  They contend that the attorney time sheets submitted are not sufficiently responsive to the Court's order.

As discussed above in connection with the motion to compel responses to Interrogatory No. 18 and Request for Production No. 21, the Court agrees that Plaintiffs have not adequately set forth the basis for the damages they request in this case and have provided a batch of billing records without accompanying explanation as to the exact matters for which Plaintiffs were billed.  Plaintiffs have, thus, failed not only to respond to discovery requests by the opposing party but have also violated the explicit Court order that they "provide additional information showing billing statements or time sheets, or calculations on how the $30,000 was allocated amongst the various cases."

Fed. R. Civ. P. 37(b)(2) provides that:

> the court shall require the party failing to obey the order or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

Plaintiffs' failure to provide the breakdown of attorney fees damages, as ordered by the Court, was not substantially justified.  Although Plaintiffs responded to several discovery requests with a statement that they will provide additional information or documents as soon as they become available, these attorney's bills were prepared long ago, and there is no reason why Plaintiffs could not have gone through the bills and indicated the cases to which the attorney's time should be allocated.  This was required by the Court's order, and there was no justification for Plaintiffs' failure to so allocate.

Indeed, Plaintiffs' failure to provide full and complete answers to interrogatories, to produce documents, and to correctly respond to requests for admissions is without substantial justification.  Good faith participation in the discovery process is not an option, but a responsibility.  Here, the Court finds that Plaintiffs failed to provide discovery as required by the rules of procedure and that

Plaintiffs' non-compliance constitutes a violation of these discovery obligations.  Defendants were put to the time and expense of motion practice to compel Plaintiffs to do what should have been done.  An award of expenses and attorney fees in bringing this motion is therefore appropriate under the circumstances.

## Order

IT IS THEREFORE ORDERED that the VanderVossen Defendants' Motion to Compel Discovery [Doc. 28] is granted in substantial part.  Plaintiffs are ordered to provide full responses to the requested discovery, to the extent set forth above, on or before May 1, 2001.

IT IS FURTHER ORDERED that all documents and other information ordered produced herein are subject to the following Confidentiality Order:  The materials produced will be used only for this case and for no other purpose.  They may not be disclosed to any other person, save for any expert who may read and consider them for purposes of rendering an opinion.  The expert may not disclose the information to anyone else.  At the close of this litigation, all information produced, and all copies thereof, are to be retained by Plaintiffs' counsel.  The records may not be disclosed to any business competitor.

IT IS FURTHER ORDERED that Plaintiffs shall reimburse Defendants for their expenses, including attorneys' fees, incurred in bringing this Motion to Compel, in an amount not to exceed $1,500.00

Lorenzo F. Garcia
United States Magistrate Judge